THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| Michelle Curry, individually and on behalf of all other similarly situated employees,<br><br>Plaintiff,<br>v.<br><br>Outsourced Associates & Staffing, LLC DBA NOW CFO, LLC and Does 1 to 100 inclusive,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:25-cv-76 DBB DBP<br><br>District Judge David Barlow<br><br>Magistrate Judge Dustin B. Pead |

Before the court are two motions concerning communications between putative class members and counsel for the parties.[1] On April 22, 2205, the court granted Plaintiff's Motion for conditional class certification in part.[2] First, Plaintiff seeks a protective order from the court prohibiting Defendants from contacting or communicating with opt-in Plaintiffs or individuals who are eligible to join the putative class outside the presence of counsel for Plaintiff.[3] Plaintiff further requests that the court order Defendants to issue a curative instruction informing putative class member they have unilaterally contacted, that they are still eligible to join the collective class.

Second, Defendants move the court for an order prohibiting Plaintiff from unauthorized communications to putative class members.[4] According to Defendants, the parties reached an

---

[1] Plaintiffs' Short Form Motion for Protective Order and Curative Instruction, ECF No. 42. Motion for Order Prohibiting Plaintiff from Unauthorized Communications to Putative Class Members. ECF No. 57.

[2] Memorandum Decision and Order granting in part Plaintiff's Motion for Conditional Certification and Court-Authorized Notice, ECF No. 26.

[3] ECF No. 42.

[4] ECF No. 57.

agreement on the notice process to notify putative class members of this action. However, Plaintiff seeks to call putative plaintiffs as part of the notice process. This is something which Defendants argue was not part of their agreement.

For the reasons stated below, Plaintiff's Motion is granted in part. Defendant's Motion is granted.[5]

## BACKGROUND

Now CFO is a Utah Corporation that offers accounting, controller, and consulting services.[6] It has offices in 23 states and provides services to clients across the country.[7] Now CFO employs hundreds of consultants who are classified as non-exempt and overtime eligible.[8] These consultants work under the supervision of regional market presidents, who authorize consultants' work and approve their time sheets. The Now CFO Employment Agreement for non-exempt, full-time consultants provides that employees are paid for "all Client Billable Hours."[9] This is defined as "billable hours worked for Employer's Clients that are billed to Clients for Employee's services".[10]

Plaintiff asserts that due to this policy in the Agreement, certain overtime eligible consultants were not paid for hours they spend on non-billable work, such as team meetings performance reviews, and training.[11] Ms. Curry claims that consultants often worked more than

---

[5] This mater is referred to the undersigned from Judge David Barlow for consideration of non-dispositive matters under 28 U.S.C. § 636(b)(1)(A).

[6] Complaint ¶ 10, ECF No. 1, filed Feb. 4, 2025.

[7] *Id.* at ¶ 20.

[8] *Id.* at ¶ 23.

[9] Non-Exempt, Full-Time Consultant Employment Agreement ("Agreement") IV.a.I., ECF 1-.

[10] Agreement I d.

[11] Complaint at ¶ 25-26

forty hours a week but were not paid overtime.[12] Ms. Curry worked as a consultant for Now CFO from May 2023 to November 2024. She signed the Agreement with Now CFO at the beginning of her employment.

On April 22, 2025, the court granted Plaintiff's Motion for Conditional Certification in part. Conditional certification was granted for "conditional certification for all persons who worked as consultants, controller consultants, CFO consultants, or in other positions with similar job duties, for NOW CFO at any time during the last three years and who signed a written employment contract containing language indicating that they would only be paid for work billed to clients."[13] The court ordered the parties to meet and confer "regarding the form, content and substance of notice that will be sent, to whom it will be sent, and the methods by which it will be sent."[14] The parties then engaged in various meet and confer efforts to reach an agreement regarding the form of Notice and the details about how it will be sent, to whom, and by what methods. Some disagreements regarding these matters remain between the partis.[15] None, however, prevent the court from deciding the current motions.

## STANDARD

A "trial court has a substantial interest in communications … for single actions involving multiple parties."[16] The Supreme court has observed that "class actions serve important goals but also present opportunities for abuse."[17] Because of the potential for abuse, "a district court has

---

[12] *Id.* at ¶¶ 77-79.

[13] Memorandum Decision and Order granting in part Plaintiff's Motion for Conditional Certification and Court-Authorized Notice, at 9, ECF No. 26.

[14] *Id.*

[15] *See* Status Report filed by Plaintiff, ECF No. 34; Objections to Status Report filed by Defendants, ECF No. 36.

[16] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171, 110 S. Ct. 482, 486, 107 L. Ed. 2d 480 (1989).

[17] *Id.*

both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."[18] This discretion is not unlimited, however, and is to follow the relevant portions of the Federal Rules.[19]

Orders restricting communications must be "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."[20] Courts have found abusive communications warranting an order entering restrictions to include communications affecting class members' decisions regarding whether to participate in the litigation.[21] A court must consider the rights of the parties under the circumstances in order to identify "the narrowest possible relief which would protect the respective parties."[22]

## DISCUSSION

### I.   Plaintiffs' Short Form Motion for Protective Order and Curative Instruction

Plaintiff moves the court for a protective order prohibiting Defendant from contacting or communicating with op-in Plaintiffs, or individuals who are eligible to join this collective action outside the presence of counsel for Plaintiff. Further, Plaintiff seeks an order from the court requiring Defendant to issue a curative instruction informing the putative class members who have been unilaterally contacted that they are still eligible to join the collective class.

---

[18] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S. Ct. 2193, 2200, 68 L. Ed. 2d 693 (1981).

[19] *Id.*

[20] *Id.* at 101.

[21] *See, e.g., Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1203 (11th Cir. 1985) (prohibiting further communications where Defendant's attempts to obtain opt-outs from putative class members "constituted an intolerable affront to the authority of the district court to police class member contact"); *Romano v. SLS Residential, Inc.*, 253 F.R.D. 292, 299 (S.D.N.Y. 2008) (prohibiting Defendant from contacting any potential plaintiffs or their family members regarding the lawsuit, but recognizing that, as to those putative class members still residing in defendants' facility, "the [d]efendants of course may have contact with them to the extent that they must continue to provide services to whoever is in their care").

[22] *Gulf Oil Co.*, 452 U.S. at 102.

At the outset, the court notes that it allowed the parties to file overlength briefing and considered that briefing. The court therefore does not address Defendant's argument concerning whether Plaintiff's motion is properly brought as a short form discovery motion.

At the heart of this dispute is Defendants' contact with putative Plaintiffs. According to Plaintiff, Now CFO agreed that the contact would stop. But it did not. Instead, Defendant has reached out to putative class members regarding whether they were paid for work they performed. In fact, "Defendant has been sending payments to putative collective class members that ostensibly are designed to compensate a given class member for time they worked that was not paid."[23] Defendant has not been providing any information regarding this lawsuit to those individuals it contacted and characterizes it as a "routine audit." Plaintiff is concerned that this is "poisoning the well" and will depress interest in joining the collective class as Defendant has used unsolicited settlement offers.

Defendant provides it has paid over $500,000 to its consultants based on their self-reports after being contacted. And most importantly, Defendant's communications have not encouraged anyone from not opening into the collective class. Therefore, any blanket protective order prohibiting future communications with the putative class members is improper. There is no "clear record" warranting such a restriction.

Although communications to potential class members may occur during this phase of the case, such communications also provide "opportunities for abuse as well as problems for courts and counsel in the management of cases."[24] "Abuse" in this context has been found to "include

---

[23] Plaintiff's Short Form Motion at 2, ECF No. 42.

[24] *Gulf Oil Co. v. Bernard*, 452 U.S. at 99-100.

5

communications that are misleading, coercive, or otherwise improper."[25] A sister court in this district, has noted that "the law is clear that sending out settlement offers to putative class members without disclosing sufficient information about a possible class action is abusive and can justify invalidating releases and issuing corrective notice."[26] The *Nakamura* court though declined to invalidate any releases or issue corrective notices at that time because the defendant had already corrected their failures. In lieu of invalidating releases, the court chose to "wait until after the class is certified and include a statement in the certification notice stating the court will entertain applications to void any releases previously signed at that time."[27]

      Here the court is concerned with Defendants' actions under the guise of an audit. The fact that the survey sent to Defendants' current and former employees was approved by Defendants' counsel does not lessen this concern. Nor does it change the court's concern that these "surveys" may not be squarely characterized as releases. Defendants have made payments and communicated with putative class members without disclosing information about this action. That falls within the possible definition of abuse. Defendants seek to overcome this problem by noting that the "surveys, phone calls, and checks were not coercive; the communications did not reference this lawsuit or suggest that acceptance of a check barred any further recovery."[28] Remaining silent about this action while offering money is precisely the problem. This presents

---

[25] *McMullen v. Synchrony Bank*, No. CV 14-1983 (JEB), 2016 WL 11129736, at *1 (D.D.C. June 20, 2016); *See Mevorah v. Wells Fargo Home Mortg., Inc.*, No. 05-1175, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005); *Cox Nuclear Medicine v. Gold Cup Coffee Srvs., Inc.*, 214 F.R.D. 696, 698 (S.D. Ala. 2003) ("Abusive practices ... include communications that coerce prospective class members into excluding themselves from the litigation; communications that contain false, misleading, or confusing statements; and communications that undermine cooperation with or confidence in class counsel.")

[26] *Jin Nakamura v. Wells Fargo Bank, Nat'l Ass'n*, No. 17-4029-DDC-GEB, 2018 WL 994706, at *9 (D. Kan. Feb. 21, 2018).

[27] *Id.*

[28] Defendant's Opposition to Plaintiff's Motion at 5, ECF No. 46.

the distinct likelihood for Defendants to seek exclusion of certain class members that accepted payments.

Further, couple these actions with Defendants repeated assurances that they were stopping contact, while continuing to reach out to putative class members, and there is enough to warrant some type of intervention by the court.

The court seeks to balance Defendants need to communicate with its employees. Therefore, Defendants may continue to communicate with their current employees regarding business matters. This will allow Defendants to continue their operations in a reasonable manner. Communication with former employees, however, does not serve the same purpose. The court will prohibit communications with former employees. Defendants are further ordered to stop communications with its current employees concerning money payments for time worked unless Defendants fully disclose the present case and provide contact information for Plaintiff's counsel to those contacted. Plaintiff's counsel is not to reach out to those employees unless they initiate contact first. Further, the court is persuaded by the court's approach in *Nakamura*. Once class certification is completed, the court will entertain applications to void any releases previously signed at that time. With this extra measure of protection, the court declines Plaintiff's invitation to issue a curative instruction. Thus, Plaintiff's Motion is granted in part.

II. **Defendants' Motion for Order Prohibiting Plaintiff from Unauthorized Communications to Putative Class Members**

Defendants represent that through negotiations the parties reached agreement regarding most issues for the form of Notice in this case. These included that "(1) the Notice would be provided by mail, email, and text, (2) there would be a 60-day opt-in period, and (3) a second

notice/reminder would be sent 30 days after the first Notice."[29] Despite these agreements,[30] Defendants note that Plaintiff's counsel now wants Defendants to produce the "contact information for the potential opt-in plaintiffs, and that counsel intends to call these individuals on the telephone to discuss the case."[31] Defendants therefore seek a protective order "precluding Plaintiff's counsel from contacting potential opt-in plaintiffs beyond the means set forth in the Notice."[32] Defendants do provide that if a potential plaintiff reaches out to Plaintiff's counsel, then counsel can discuss the case, but following Plaintiff's counsel's method of initiating contact will improperly solicit op-in participation.

In response to Defendants' motion, Plaintiff characterizes the request as "broad[,] all encompassing"[33] and not supported by the record in this case. As a baseline, a demonstrated risk of abuse or misleading communication is needed to grant the restrictions sought by Plaintiff.[34] The Supreme Court has provided that an "order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties."[35] Here there is no record supporting such limitations.

---

[29] Motion for Order Prohibiting Plaintiff from Unauthorized Communications to Putative Class Members at 2, ECF No. 57.

[30] A narrow issue remains in dispute regarding the Notice process that has been submitted to the court. It is not material to the present dispute.

[31] Motion for Order Prohibiting Plaintiff from Unauthorized Communications to Putative Class Members at 3.

[32] *Id.*

[33] Plaintiff's Opposition to Defendants' Motion for Order Prohibiting Plaintiff From Unauthorized Communications to Putative Class Members at 2, ECF No. 60.

34

[35] *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101, 101 S. Ct. 2193, 2200, 68 L. Ed. 2d 693 (1981).

Further, Plaintiff cites several cases where courts permitted discovery and did not limit it as Defendants seek.[36] This includes allowing phone calls.[37] In essence, Plaintiff's discovery should not be limited, and if some putative class members become aware of this litigation from Plaintiff's counsel's contact, this is not contrary to the purposes of the Fair Labor Standard Act.

Although some courts have allowed counsel to contact putative plaintiffs via telephone calls, Plaintiff provides no authority for the proposition that having reached an agreement regarding most of the notice process, that phone calls should now be added as part of that process. The majority of cases cited by Plaintiff are distinguishable because the current case is not in the post notice phase unlike most of Plaintiff's cited authorities. Further, those courts that allowed phone calls were part of the agreement reached by the parties. The court therefore will grant Defendants' Motion.

---

[36] *See In re Bank of Am. Wage & Hour Emp. Pracs. Litig.*, 275 F.R.D. 534, 543 (D. Kan. 2011) (allowing discovery of the names and contact information of former bank employees who worked in certain positions as they may have information about the policies or plans); *Gieseke v. First Horizon Home Loan Corp.*, 2007 WL 445202, at *4 (D. Kan. Feb. 7, 2007), aff'd as modified, 2007 WL 1201493 (D. Kan. Apr. 23, 2007) (permitting plaintiffs to collect the social security numbers of putative class members whose notices have been returned as undeliverable); *Graczyk v. Weider Nutrition Grp., Inc.*, No. 2:04 CV 1065 DAK, 2005 WL 8175106, at *5 (D. Utah Dec. 28, 2005) (allowing discovery of specific documents in personnel files); *McReynolds v. Bigler*, No. 88-1343-C, 1990 WL 129454, at *2 (D. Kan. Aug. 6, 1990) (providing for discovery of physician information because they "are percipient fact witnesses, and as such, the information and opinions they possess should be freely accessible to both parties to the litigation").

[37] *Palczynsky v. Oil Patch Grp, Inc.*, No. 2:21-cv-1125 DHU KRS, 2025 WL 844172, at *9 (D.N.M. Apr. 7, 2025) ("The Court sees also no reason why Plaintiffs should not be able to make follow-up phone calls to those putative class members whose contact information appears to be incorrect or no longer valid."); *Porter v. W. Side Rest.*, LLC, No. 13-1112-JAR-KGG, 2014 WL 1642152, at *13 (D. Kan. Apr. 24, 2014) (ordering the defendant to provide plaintiff a list of first and last names, last-known addresses and telephone numbers); *Pinkston v. Wheatland Enters., Inc.*, No. 11-CV-2498, 2013 WL 1191207, at *4 (D. Kan. Mar. 22, 2013) (permitting plaintiff's counsel to contact potential class members "only to verify contact information and to verify receipt of notice").

## CONCLUSION

For the reasons set forth above Plaintiff's Motion for Protective Order and Curative Instruction is GRANTED IN PART.

Defendants' Motion for Order Prohibiting Plaintiff from Unauthorized Communications to Putative Class Members is GRANTED.

IT IS SO ORDERED.

DATED this 19 February 2026.

_____
Dustin B. Pead
United States Magistrate Judge